UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RONALDO DESIGNER JEWELRY, INC.                                    PLAINTIFF

v.                                          CIVIL ACTION NO. _5:14cv68 DCB-MTP_

ANNE RYAN, L.L.C.
D/B/A ANNE RYAN,
ROBERT DAVIN SHAW,
MICHELLE E. SHAW,
JANE ENVY, LLC,
ARABELLA IMPORTS, LLC,
STEVE O'BRIEN, and
JOHN DOES Numbers 1 through 99                                    DEFENDANTS



## VERIFIED COMPLAINT
(JURY TRIAL IS DEMANDED)

Comes now Plaintiff, Ronaldo Designer Jewelry Inc., by counsel, and for its causes of

action against Defendants, Anne Ryan, L.L.C. d/b/a Anne Ryan, Robert Davin Shaw, Michelle

E. Shaw, Jane Envy, LLC, Arabella Imports, LLC, Steve O'Brien, and John Does Numbers 1

through 99, states as its Amended Complaint, the following:

### INTRODUCTION

1.      This is a Complaint for injunctive relief and for civil damages.  Count I states a

claim for Copyright Infringement pursuant to 17 U.S.C. §101 *et seq.* by and through Defendants'

unlawful copying, reproduction, manufacture, importation, distribution, sale and use of Plaintiff's

copyrighted works in Defendants' products which they market and sell to the public; Count II

states a claim for Trademark Infringement by and through Defendants' use of Plaintiff's

registered trademark; Count III states a claim for Counterfeit Trademark Infringement pursuant

the Lanham Act, 15 U.S.C. § 1114 *et seq.*; Count IV states a claim for Unfair Trade Practices

and Unfair Competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a), by and through

Defendants' use of Plaintiff's trademarks, Defendants' false representations, and Defendants'

other acts which lead and will in the future lead the public, through mistake or deception, to believe that Defendants' competing, inferior products are authorized or sponsored by or originate with or are otherwise associated with the Plaintiff; Count V states a claim for Common Law Unfair Trade Practices and Unfair Competition; Count VI states a claim for Vicarious Liability by and through the supervisory control over and financial interest in the infringing conduct of the operators and owners of the entities offering the infringing products for sale; and Count VII states a claim for a declaratory judgment that Defendant Jane Envy, LLC is liable for the infringing conduct at issue herein as the alter ego or successor entity of Defendant Anne Ryan, L.L.C.

## PARTIES

2.      Plaintiff Ronaldo Designer Jewelry, Inc. ("Ronaldo") is a Kentucky corporation with its principal place of business located at 115 East Spring Street, Suite 102, New Albany, Indiana 47150.

3.      a.      Defendant Anne Ryan, L.L.C. ("Anne Ryan") is a Texas limited liability company doing business in Mississippi (including committing the infringing acts described herein), doing business as Anne Ryan, and having its principal place of business at 10109 Broadway Street, San Antonio, Texas 78217. Anne Ryan may be served with process by service upon its registered agent, Davin Shaw, at 240 Elizabeth Road, San Antonio, Texas 78209.

b.      Upon information and belief, Defendant Jane Envy, LLC ("Jane Envy") is a Texas limited liability company doing business in Mississippi (including committing the infringing acts described herein) and otherwise, in connection or affiliation with or as the alter ego of Anne Ryan, and having its principal place of business at 10109 Broadway Street, San

2

Antonio, Texas 78217. Jane Envy may be served with process by service upon its registered agent, Michelle Shaw, at 10109 Broadway Street, San Antonio, Texas 78217.

c.     Upon information and belief, Defendant Robert Davin Shaw ("Davin") is a Texas resident who was a Partner, Member, Governing Person, and/or owner of Anne Ryan and Jane Envy at all times relevant herein.   Upon information and belief, at all times relevant herein, Defendant Robert Davin Shaw had the right and ability to supervise, had an obvious and direct financial interest in, and actively controlled the infringing conduct of Anne Ryan and Jane Envy. Robert Davin Shaw may be served with process by service at 240 Elizabeth Road, San Antonio, Texas 78209.

d.     Upon information and belief, Defendant Michelle E. Shaw ("Michelle") is a Texas resident who was a Partner, Member, Governing Person, and/or owner of Anne Ryan and Jane Envy at all times relevant herein.  Upon information and belief, at all times relevant herein, Defendant Michelle E. Shaw had the right and ability to supervise, had an obvious and direct financial interest in, and actively controlled the infringing conduct of Anne Ryan and Jane Envy. Michelle E. Shaw may be served with process by service at 240 Elizabeth Road, San Antonio, Texas 78209.

e.     Upon information and belief, Defendant Arabella Imports, LLC ("Arabella") is a Texas limited liability company doing business in Mississippi (including committing the infringing acts described herein), and having its principal place of business at 240 Elizabeth Road, San Antonio, Texas 78209, with other offices located at 10109 Broadway Street, San Antonio, Texas 78217. Upon information and belief, Defendant Anne Ryan at all relevant times has been marketing and selling goods imported and distributed through Arabella, including, upon

3

information and belief, the infringing works that are the subject of this lawsuit. Arabella may be served with process by service upon its registered agent, Robert Davin Shaw, at 10109 Broadway Street, San Antonio, Texas 78217.

   f. Upon information and belief, Defendant Steve O'Brien ("O'Brien") is a Georgia resident selling jewelry in Mississippi and other states on behalf of Defendants Anne Ryan and Jane Envy. Upon information and belief, at all relevant times, O'Brien served as Sales Representative for Anne Ryan and Jane Envy, and committed the infringing acts described herein. In addition, O'Brien had the right and ability to supervise and a direct financial interest in the infringing conduct of Anne Ryan and Jane Envy. Upon information and belief, O'Brien may be served with process by service at O'Brien Sales, Inc., 1 Piedmont Center NE, Suite 506, Atlanta, Georgia 30305-1562.

   4. John Does Nos. 1 through 99 are fictitious names for Defendant persons or business entities which have reproduced, manufactured, copied, imported, distributed, displayed, and sold the infringing works that comprise the subject of this Complaint, for or on behalf of the Defendants named at numerical paragraph 3 above, or in concert or privity with it, including said Defendants' manufacturers, importers, distributors, brokers, and vendors, and for Defendant persons, including corporate officers, directors, managers, operators, representatives, and agents, or business entities having the right to supervise the infringing activities, or having a financial interest therein. The true identities of these Defendants are yet unknown to Plaintiff.

   5. At all times relevant herein, Defendants were variously engaged in the business of manufacturing, reproducing, marketing, promoting, importing, distributing, displaying, and

selling, among other things, metal jewelry, merchandise, and materials constituting, embodying, and otherwise incorporating the infringing works that comprise the subject of this lawsuit.

6.     Defendants Anne Ryan and Jane Envy have offered the products that are the subject of this dispute for sale in interstate commerce, including, upon information and belief, to stores or individuals in the Southern District of Mississippi, as well as in other retail outlets in other states.

**JURISDICTION AND VENUE**

7.     Jurisdiction is possessed by this Court pursuant to 28 U.S.C. §1331, and 28 U.S.C. §1338 as the Complaint alleges violations of federal Copyright Law and the Lanham Act. This Court has jurisdiction over the claim for common law unfair trade practices and unfair competition herein pursuant to 28 U.S.C. §1338(b) and 1367, and under the doctrines of pendent and supplemental jurisdiction, since these claims are joined with substantial and related claims under the Copyright Laws and Lanham Act Laws of the United States.   Additionally and alternatively, this Court has original diversity jurisdiction over this controversy pursuant to 28 U.S.C. §1332(a)(1), as the parties are residents of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.   The Court has jurisdiction over the person of the foreign Defendants by virtue of Mississippi's Long-Arm Statute, as, upon information and belief, all foreign Defendants are transacting business, including the infringing acts described herein, in Mississippi.

8.     Venue in the Southern District of Mississippi is proper under 28 U.S.C. §§1391(b) because a substantial part of the events giving rise to these claims arose within the Southern District of Mississippi, which is sufficient for jurisdiction under Mississippi's Long-

5

Arm Statute, and Defendants have transacted business and committed their infringing and tortious acts within the Southern District of Mississippi.  In this regard, upon information and belief, Defendants at all relevant times have been marketing and selling goods, including, upon information and belief, the infringing works that are the subject of this lawsuit within the Southern District of Mississippi directly and indirectly to individuals and entities residing and transacting business in the Southern District of Mississippi.

## BACKGROUND FACTS

9.      Plaintiff's principal, known as Ronaldo, is a master artisan and well recognized expert jewelry artist.

10.     Ronaldo is so widely recognized as an expert that he has trained at least forty-eight (48) artisans in the craft of jewelry design, many of whom have achieved the position of master craftsmen.

11.     Beginning in or about 1991, Plaintiff and its predecessor in interest developed nearly 900 distinctive handcrafted jewelry designs which Plaintiff sells and markets in interstate commerce (the "Ronaldo Collection").

12.     Plaintiff's jewelry designs are characterized by a consistent combination of design features that give the Ronaldo Collection jewelry line a distinctive look that is immediately identifiable and serves to associate the source of the jewelry works with Plaintiff and its brand.

13.     The consistent design features of the Ronaldo Collection jewelry line give each bracelet common features and enhance the compatibility and collectability of the jewelry creations, such that they can be worn together to create a wrist wrapping stack of bracelets that, while different, have an overall consistency in look and feel.

6

14.     The design features which comprise the trade dress of Plaintiff's jewelry works include a combination of square, diamond and round cut 18-20 gauge gold artist's wire and silver wire, which when used in a twisted form has approximately 8-10 twists per inch and use 18 gauge half round wrap to form the hook clasps.  The clasps of most of the Plaintiff's jewelry have the distinctive, signature shape of a house, having at least six equal horizontal wraps and then wraps that taper to a point, like the roof of a house, to meet the hook and eye sides of the closure.  Bracelets that feature gemstones or pearls incorporate stones and pearls that are 5-6 millimeters in size, and are set in the bracelet using a distinctive "window" frame for each stone or pearl; four wire wraps flank the windows with two wraps in between each pearl or stone. Bracelets which incorporate flat stones or bugle bead stones use stones that are 4 by 13 millimeters. Pattern bar bracelets feature a flat pattern bar bordered by a square and twisted signature gold and/or silver wire wrap, with five sets of wraps, each three wraps around.  By using gold and silver wire and stones and/or pearls of similar dimensions and consistent number of wraps to frame jewels and embellish pattern bars, all Ronaldo bracelets share a recognizable look that identifies their source.  These design features (referred to herein as Plaintiff's "Trade Dress") are not essential to the function of the jewelry, nor are they essential to the cost, quality, or manufacturing thereof, which Plaintiff sells and markets in interstate commerce.

15.     Plaintiff sells its distinctive jewelry through thousands of catalogs and other marketing materials it has distributed over the years, as well as through marketing online and at trade shows, and through its long-cultivated, specialized, and highly valuable knowledge of and relationships with decision-makers at certain jewelry retailers who are customers, or prospective

customers, which Plaintiff has developed through research, trial and error, and significant investment over many years.

16.     Plaintiff and, previously, Plaintiff's predecessor in interest marketed the Ronaldo Collection lines of jewelry and accessories since their creation and Plaintiff continues to design and market new lines.

17.     Plaintiff, through its predecessor in interest, adopted its distinctive RONALDO and THE RONALDO COLLECTION® trademarks (collectively referred to herein as "Plaintiff's Marks") at least as early as 1999.  Commencing in or about 1999, Plaintiff's predecessor in interest used Plaintiff's Marks in connection with its distinctively designed jewelry and accessories.  Such use has been substantially exclusive and includes applying it to packaging and marketing, as well as labels and tags affixed to Plaintiff's jewelry that it has sold and marketed in interstate commerce.

18.     Since 1999, Plaintiff, through its predecessor in interest, has used and promoted Plaintiff's Marks in connection with its distinctive Ronaldo Collection jewelry designs and has experienced significant sales success and sold millions of items to jewelry stores and major retailers generating millions of dollars in annual wholesale and retail revenue through sales in no less than thirty-five (35) states and five (5) countries.

19.     Plaintiff's jewelry designs, Marks, and Trade Dress have been promoted in over 50,000 catalogs, featured in *Who's Who in America,* promoted extensively on the Internet, through Plaintiff's website, and including, but not limited to, a total exposure of 1.4 million on Facebook.  Plaintiff's jewelry designs are displayed in many trade shows across the country including, but not limited to, the Trans World Trade Show in Chicago, Helen Brett Trade Show

8

in Memphis and New Orleans, the Atlanta Gift and Jewelry Trade Show, the Las Vegas Trade Show, the San Francisco Jewelry Gift Show and many others and at the Academy Awards Luxury Room. Plaintiff displays its jewelry designs at approximately 40 art fairs, as well as in displays for large retail stores such as Dillards, Lazarus, Boynton, and Carson Pirie Scott. Through Plaintiff's extensive sales and marketing efforts over nearly two decades, wholesale and retail consumers of Plaintiff's line of distinctive bracelets recognize the overall look and feel of Plaintiff's Trade Dress as being associated solely with and emanating solely from a single source, namely Plaintiff.

20.    Through Plaintiff's, and, previously, its predecessor in interest's, extensive sales and marketing, through written and online marketing materials and at trade shows, as well as the marketing and relationships with jewelry stores and major retailers developed and nurtured by Plaintiff and its predecessor in interest over the last decade, consumers of Plaintiff's line of distinctive jewelry have come to recognize Plaintiff's Marks as being associated solely with and emanating solely from a single source, namely Plaintiff.

21.    Upon information and belief, at the time Plaintiff's predecessor in interest entered the jewelry market in or around 1991, it was the first to produce a line of jewelry that incorporates the Trade Dress described herein, and remained the exclusive producer of such products and the exclusive user of its distinctive Trade Dress until approximately 2012 when companies, such as Anne Ryan and Jane Envy, among others, began plagiarizing Plaintiff's Trade Dress and designs.

22.    Upon information and belief, Plaintiff, including through its predecessor in interest, was the first and only business to produce and market the Ronaldo Collection line of

9

distinctive jewelry designs in connection with Plaintiff's Marks until approximately 2012 when companies, such as Defendants Anne Ryan and Jane Envy, among others, began plagiarizing Plaintiff's Marks and designs.

23.     As Plaintiff's sales increased, the popularity and success of its designs increased and Plaintiff's Marks, Trade Dress, and designs became better and more widely known.  By 2012, Plaintiff's Marks, Trade Dress, and designs were so popular, recognized, and desired that third parties began to plagiarize Plaintiff's Marks, Trade Dress, and designs.

24.     Plaintiff vigilantly polices the market for infringements of its copyrights, Marks, and Trade Dress, and through litigation and cease and desist letters has been successful in stopping numerous infringements.

COUNT I

COPYRIGHT INFRINGEMENT

25.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 24 herein as though fully set forth.

26.     At all times relevant herein, Plaintiff was variously engaged in the business of manufacturing, marketing, distributing, and selling decorative jewelry and accessories.

27.     In or about 1995, Plaintiff, through its predecessor in interest, created its work known as "The Power of Prayer Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit A.  (This item and the items displayed in Exhibits E, G, J, M, O, Q, T, W, and Y are collectively referred to herein as "Plaintiff's Works.")

[<em>Photograph on next page.</em>]

10



28.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit B. (These items, the items displayed in Exhibits F, H, K, N, P, R, and U, and items referenced in Paragraphs 61 and 65 are collectively referenced herein as the "Infringing Merchandise.")



11

29.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "The Power of Prayer Bracelet" Work.

30.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-220-847, for the "The Ronaldo Collection" website in which the "The Power of Prayer Bracelet" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) is attached hereto and incorporated herein by reference as Exhibit C.

31.     Plaintiff received from the United States Copyright Office Certificate of Registration VA 1-813-280, for the "The Power of Prayer Bracelet" Work, having an Effective Registration Date of April 17, 2012, which Certificate is attached hereto and incorporated herein by reference as Exhibit D.

32.     Plaintiff, through its predecessor in interest, created its work known as "The Wide Power of Prayer Bracelet," which is a decorative bracelet that is a derivative of the "The Power of Prayer Bracelet" Work, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit E.



33.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which

are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit F.



34.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "The Wide Power of Prayer Bracelet" Work.

35.     In or about 1991, Plaintiff, through its predecessor in interest, created its work known as "Stackable Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit G.



13

36.    Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated herein collectively by reference as Exhibit H.

 

37.    Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Stackable Bracelet" Work.

38.    Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-125-963, for the Gold Craft Fashions jewelry design and catalog in which the "Stackable Bracelet" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) is attached hereto and incorporated herein by reference as Exhibit I.

39.    In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "Pearl of My Heart," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit J.



40.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit K.



41.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Pearl of My Heart" Work.

42.      Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-140-610, for the Gold Craft Associates Dealer Handbook in which the "Pearl of My Heart" Work is depicted, having an Effective Registration Date of November 13, 2001, which Certificate (including the assignment thereof) is attached hereto and incorporated herein by reference as Exhibit L.

15

43. In or about 1991, Plaintiff, through its predecessor in interest, created its work known as "Forever Fellowship Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit M.



44. Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit N.



45. Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Forever Fellowship Bracelet" Work.

46. Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-125-963, for the Gold Craft Fashions jewelry design and catalog in which the "Forever Fellowship Bracelet" Work is depicted, having an

16

Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) was previously attached hereto and incorporated herein by reference as Exhibit I.

47.    In or about 1991, Plaintiff, through its predecessor in interest, created its work known as "Rediscovered Treasure Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit O.



48.    Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit P.




49.    Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Rediscovered Treasure Bracelet" Work.

17

50.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-125-963, for the Gold Craft Fashions jewelry design and catalog in which the "Rediscovered Treasure Bracelet" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) was previously attached hereto and incorporated herein by reference as Exhibit I.

51.     In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "Classic Dome," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit Q.



52.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit R.

[*Photographs on next page.*]

 

53.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Classic Dome" Work.

54.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-131-182, for the "Gold Craft Associates Fall Catalog 2000" jewelry design and catalog in which the "Classic Dome" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) is attached hereto and incorporated herein by reference as Exhibit S.

55.     In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "THE LOVE KNOT," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit T.



56.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit U.



57.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "THE LOVE KNOT" Work.

58.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-220-847, for the "The Ronaldo Collection" website in which the "THE LOVE KNOT" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) was previously attached hereto and incorporated herein by reference as Exhibit C.

59.     Plaintiff received from the United States Copyright Office Certificate of Registration VA 1-815-649, for the "THE LOVE KNOT and 'ROMANCE CARD' Package Insert" Work, having an Effective Registration Date of April 20, 2012, which Certificate is attached hereto and incorporated herein by reference as Exhibit V.

60.     In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "I LOVE YOU BRACELET," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit W.



61.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above.

62.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "I LOVE YOU BRACELET" Work.

63.     Plaintiff received from the United States Copyright Office Certificate of Registration VA 1-813-285, for the "I LOVE YOU BRACELET and 'ROMANCE CARD' Package Insert" Work, having an Effective Registration Date of April 20, 2012, which Certificate is attached hereto and incorporated herein by reference as Exhibit X.

64.     In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "THREE TIMES THE LOVE," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit Y.



65.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets which are substantially similar to the protected Work of Plaintiff referenced above.

66.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "THREE TIMES THE LOVE" Work.

67.     Plaintiff received from the United States Copyright Office Certificate of Registration VA 1-813-278, for the "THREE TIMES THE LOVE and 'ROMANCE CARD' Package Insert" Work, having an Effective Registration Date of April 20, 2012, which Certificate is attached hereto and incorporated herein by reference as Exhibit Z.

68.     Defendants individually, or by and through their agents, employees, and representatives, with notice of Plaintiff's right, title, and interest in and to Plaintiff's Works, and without Plaintiff's authorization, have had access to Plaintiff's Works through their wide dissemination in the marketplace and used Plaintiff's Works to manufacture, reproduce, copy, publish, display, distribute, transmit, sell, and otherwise market their Infringing Merchandise.

69.     Upon information and belief, Defendants willfully and deliberately infringed said Plaintiff's copyright by copying Plaintiff's Works, and manufacturing, reproducing, importing, publishing, displaying, distributing, transmitting, selling, or otherwise placing on the market

Defendants' Infringing Merchandise and, thus, using Plaintiff's Works without authorization, all to Plaintiff's detriment.

70.     Upon information and belief, Defendants have copied, manufactured, reproduced, imported, published, displayed, distributed, transmitted, marketed, promoted, and sold the Infringing Merchandise and will, unless restrained, continue to do so in the future.

71.     Defendants' infringement of Plaintiff's copyrights has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

**COUNT II**

**TRADEMARK INFRINGEMENT**

72.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 71 herein as though fully set forth.

73.     Plaintiff is the owner of a federally registered trademark for goods in International Classes 3 and 14: THE RONALDO COLLECTION (Reg. No. 4,253,554) for jewelry and jewelry cleaning solution (referred to herein as the "Trademark Registration"). A copy of which Trademark Registration is attached hereto and incorporated herein by reference as Exhibit AA.

74.     Plaintiff owns and enjoys trademark rights throughout the United States in and to Plaintiff's Marks and the appurtenant goodwill associated therewith, which rights are superior to any rights Anne Ryan may claim in and to such marks.

75.     Plaintiff's Marks are strong, unique, arbitrary, and inherently distinctive. The inherent distinctiveness of Plaintiff's Marks is used and understood to identify Plaintiff's brand, to distinguish Plaintiff's jewelry from those manufactured or sold by others, and to indicate the source and origin of such jewelry.

23

76.     For over a decade, Plaintiff, through its predecessor in interest, has extensively advertised and promoted its distinctive handcrafted jewelry designs, including without limitation Plaintiff's Works, using Plaintiff's Marks, and it has expended great time, effort, and hundreds of thousands of dollars in connection therewith.  Plaintiff promotes its distinctive handcrafted jewelry designs and Plaintiff's Marks by participating in trade shows and other display events, visiting buyers at their offices and elsewhere, through online marketing, and through the dissemination of brochures and catalogs. By offering a variety of handmade designs, Plaintiff makes it possible for devoted customers to acquire collections of handmade jewelry items, thereby building brand recognition and loyalty.

77.     As a result of Plaintiff's substantial, continuous, and extensive advertising, promotion, and sales, Plaintiff's Marks have acquired secondary meaning so that they identify Plaintiff's goods, and distinguish them from goods manufactured by others.  Plaintiff's Marks have acquired source-identifying meaning and valuable goodwill, all of which operates for the benefit of Plaintiff.  Plaintiff's Marks are widely and favorably accepted and recognized as identifying Plaintiff and its goods, or at least the goods of a single source, albeit an anonymous one.

78.     Plaintiff is the owner and proprietor of all right, title, and interest in and to Plaintiff's Works and Plaintiff's Marks, including but not limited to copyright, trademark, and trade dress in the creative and original elements thereof, and it has not licensed or otherwise authorized Defendants to reproduce, manufacture, import, display, market, sell, or distribute Plaintiff's Works or any derivative work, or to reproduce, publish, display, distribute, transmit,

24

or otherwise use Plaintiff's Marks or dress, including without limitation, in the marketing of the Infringing Merchandise.

79.     At all relevant times, Anne Ryan, and, upon information and belief, Jane Envy used a mark which is identical in sound, meaning, appearance, and commercial impression and otherwise substantially similar to Plaintiff's Marks in connection with the Infringing Merchandise.

80.     At all relevant times, Anne Ryan, and, upon information and belief, Jane Envy used a mark which is identical in sound, meaning, appearance, and commercial impression and otherwise substantially similar to Plaintiff's Marks in its advertising and marketing materials and on its invoices to customers in connection with the Infringing Merchandise by stating that their bracelets are "RONALDO" bracelets.  A copy of an advertising email and an invoice are attached hereto and incorporated herein by reference as Exhibit BB.

81.     Defendants' Infringing Merchandise is virtually identical in character (but not quality) to Plaintiff's Works and is sold in the same channels of commerce at a fraction of the price of Plaintiff's Works, at trade shows, markets, online, and otherwise.

82.     Defendants offer their Infringing Merchandise to the same distributors, boutiques, jewelry stores, and major retailers as Plaintiff.

83.     At all relevant times, Anne Ryan, and, upon information and belief, Jane Envy sold their Infringing Merchandise to distributors, boutiques, jewelry stores, and major retailers who compete with the boutiques, jewelry stores, and major retailers that purchase Plaintiff's Works, which competing boutiques, jewelry stores, and major retailers are located and may display the Infringing Merchandise and use Plaintiff's Marks in near proximity to the boutiques,

jewelry stores, or major retailers that purchase, or consider purchasing, Plaintiff's Works or Plaintiff's other jewelry designs.

84.     Defendants' unauthorized use of a mark identical or substantially similar to Plaintiff's Marks in interstate commerce in connection with the Infringing Merchandise was and is intended to and will likely confuse, deceive, or cause mistake among purchasers of the Infringing Merchandise and Plaintiff's Works as to the source, origin, and sponsorship thereof and the association of Plaintiff therewith, and has and will continue to harm Plaintiff's goodwill and adversely affect Plaintiff's ability to conduct interstate commerce.

85.     Defendants' infringement of Plaintiff's Marks is intentional.

86.     Defendants' intentional and willful infringement of Plaintiff's Marks has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

**COUNT III**

**COUNTERFEIT TRADEMARK INFRINGEMENT
PURSUANT TO THE LANHAM ACT**

87.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 86 herein as though fully set forth.

88.     At all relevant times, Anne Ryan, and, upon information and belief, Jane Envy used a counterfeit, non-genuine, and spurious mark which is identical with, or substantially indistinguishable from, Plaintiff's registered THE RONALDO COLLECTION Mark (referred to herein as "Plaintiff's Registered Mark") by stating that its bracelets are "RONALDO" bracelets.

89.     Plaintiff's Registered Mark is registered on the Principal Register for use with jewelry, the same goods in connection with which Defendants used the counterfeit mark in the sale, offer for sale, and distribution of the Infringing Merchandise.

90.     Plaintiff continues to use its Registered Mark in interstate commerce.

91.     Defendants' use of the counterfeit mark is not on or in connection with goods or services for which Defendants were, at the time of production, authorized by Plaintiff to use Plaintiff's Registered Mark.

92.     Defendants' use of the counterfeit mark in interstate commerce was intentional and with knowledge that such mark was a counterfeit.

93.     Defendants' use of the counterfeit mark is likely to confuse, deceive, or cause mistake among purchasers of the Infringing Merchandise.

94.     Defendants' use of the counterfeit mark has and will continue to harm Plaintiff's goodwill and adversely affect Plaintiff's ability to conduct interstate commerce.

95.     Defendants' intentional and willful use of the counterfeit mark has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

**COUNT IV**

**TRADE DRESS INFRINGEMENT AND UNFAIR**
**COMPETITION PURSUANT TO THE LANHAM ACT**

96.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 herein as though fully set forth.

97.     Plaintiff is the owner of all right, title, and interest in and to its Trade Dress and has not licensed or otherwise authorized Defendants to reproduce, manufacture, import, display, market, sell, or distribute Plaintiff's Works or any derivative work or to reproduce, publish,

27

display, distribute, transmit, or otherwise use Plaintiff's Trade Dress in the marketing of the Infringing Merchandise.

98.     Plaintiff's Trade Dress, including the design, appearance, styling, look, and feel of Plaintiff's Works, which include but are not limited to the design elements described above, individually or in combination, are unique, arbitrary, non-functional, and inherently distinctive. The inherent distinctiveness of Plaintiff's Works is used and understood to identify Plaintiff's brand, to distinguish Plaintiff's goods from those manufactured or sold by others, and to indicate the source and origin of these goods.

99.     Plaintiff's Trade Dress, including the design, appearance, styling, look and feel of Plaintiff's Works, which includes but is not limited to the design elements described above, individually or in combination, which elements are not essential to the use of the product, could be replaced by other alternative design features without affecting the functionality of the product, do not materially affect the cost of the product, and create no significant non-reputation related disadvantage to competitors.

100.    For over two decades, Plaintiff and its predecessor in interest have extensively advertised and promoted its distinctive jewelry designs, and Trade Dress and expended great time, effort, and hundreds of thousands of dollars in connection therewith.  Plaintiff promotes its jewelry line in catalogs, trade shows, and markets including at AmericasMart in Atlanta, trade publications and on the Internet.   Through these marketing devices, Plaintiff presents the consistent overall design, configuration and construction, and overall image and appearance of its jewelry line as a source-identifying symbol of jewelry produced by and originating from a single source, namely Plaintiff.

28

101.    As a result of Plaintiff's substantial, continuous, and extensive advertising, promotion, and sales, the Trade Dress of its Ronaldo jewelry line has acquired secondary meaning so that it identifies Plaintiff's goods, and distinguishes them from goods manufactured by others.  The Trade Dress has acquired source-identifying meaning and valuable goodwill, all of which operates for the benefit of Plaintiff.  Plaintiff's Trade Dress is widely and favorably accepted and recognized as identifying Plaintiff and its goods, or at least the goods of a single source, albeit an anonymous one.

102.    Defendants' infringement of Plaintiff's Trade Dress is intentional.

103.    Defendants have, through their infringement of Plaintiff's Works, Marks, and Trade Dress, and the other conduct described above, engaged in unfair and deceptive trade practices and unfair competition in violation of Section 43(a) of the Lanham Act.

104.    Upon information and belief, Defendants have been reproducing, copying, distributing, importing, promoting, advertising, and otherwise placing on the market in interstate commerce the Infringing Merchandise since at least as early as October 1, 2012, and have willfully and deliberately sought to benefit from, and to trade upon, the good works, good name, good reputation and goodwill of Plaintiff, and upon Plaintiff's Works, Marks, and Trade Dress, all to Plaintiff's damage and detriment.

105.    Defendants' commercial advertising, promotion, and use of Plaintiff's Works, Marks, and Trade Dress, alone or in combination with Plaintiff's other intangible property and assets, constitutes a false or misleading description of fact, false designation of origin, palming off and unfair competition that is likely to deceive, and that has in fact deceived, actual and potential customers into believing that the Infringing Merchandise originate with Plaintiff, or are

29

made by Plaintiff, or are rendered by Defendants as authorized agents of, or in association or affiliation with or under the sponsorship of Plaintiff. As a result of this false advertising, false designation of origin, palming off, and unfair competition, Plaintiff's base of customers and its ability to build upon said base has been diverted from Plaintiff.

106. The Infringing Merchandise are unauthorized, inferior reproductions of Plaintiff's Works and infringe upon Plaintiff's Marks and Trade Dress and its other intellectual property and proprietary rights.

107. Cheap copies of Plaintiff's most popular lines are saturating the market, unfairly competing with Plaintiff's quality goods and depressing to the point of near eradication the demand for Plaintiff's more expensive products.

108. Plaintiff has no control over the quality or craftsmanship of Defendants' Infringing Merchandise, or the use of Plaintiff's Works, Marks or Trade Dress by Defendants. Defendants' failure to produce jewelry evincing the quality of Plaintiff's jewelry, including but not limited to Plaintiff's Works, as well as any other failure, neglect, or default by Defendants in conjunction with the manufacture, distribution, sale, marketing, and customer service of the Infringing Merchandise in association with (but without authorization) Plaintiff's Works, Marks, and Trade Dress will reflect adversely on Plaintiff as the perceived provider thereof, and will thus hamper Plaintiff's efforts to protect its outstanding reputation for high quality in design, metalwork, aesthetics, composition, and construction that represent the reputation and goodwill of Plaintiff's distinctive handcrafted jewelry lines. This has resulted and will continue to result in lost business and damage to Plaintiff's reputation and goodwill.

109.    Defendants' intentional and willful infringement of Plaintiff's Works, Marks, and Trade Dress, false designation of origin, palming off, and unfair competition has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

**COUNT V**

**UNFAIR COMPETITION**

110.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 109 herein as though fully set forth.

111.    Defendants have, through the conduct described above, engaged in unfair trade practices and unfair competition.

112.    Upon information and belief, Defendants have been reproducing, copying, distributing, and otherwise placing on the market the Infringing Merchandise since at least as early as October 1, 2012, and engaging in the above-mentioned conduct with the intent to misappropriate the labors and expenditures of Plaintiff and confuse or deceive purchasers as to the source or origin of the Infringing Merchandise for Defendants' own unfair profit.

113.    Defendants' conduct is likely to cause confusion or deceive purchasers of the Infringing Merchandise as to the source or origin of the Infringing Merchandise and upon information and belief, has caused such confusion and deception.

114.    Defendants have willfully and deliberately sought to benefit from, and to trade upon, the good works, good name, and good reputation of Plaintiff, all to Plaintiff's financial damage and detriment, including by injuring and impairing the goodwill and reputation of Plaintiff in excess of any jurisdictional minimum of this Court.

115.    Defendants' unfair competition will continue unless enjoined by this Court.

## COUNT VI

### COPYRIGHT INFRINGEMENT - VICARIOUS LIABILITY

116.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 115 herein as though fully set forth.

117.    Upon information and belief, Defendants Davin and Michelle were at all relevant times employed as the Partners, Governing Persons, and/or owners of Defendants Anne Ryan, Arabella, and Jane Envy.

118.    Upon information and belief, Defendants Davin and Michelle had the right and ability to supervise the infringing conduct of Defendants Anne Ryan, Arabella, and Jane Envy.

119.    Upon information and belief, Defendants Davin and Michelle had an obvious and direct financial interest in Defendants Anne Ryan's, Arabella's, and Jane Envy's exploitation of Plaintiff's copyrighted materials.

120.    As a result of Defendants Davin's and Michelle's supervisory control over and financial interest in the infringing conduct of Defendants Anne Ryan, Arabella and Jane Envy, Davin and Michelle are vicariously responsible and personally liable for the infringing actions of Defendants Anne Ryan, Arabella, and Jane Envy.

## COUNT VIII

### DECLARATORY JUDGMENT – ALTER EGO/SUCCESSOR LIABILITY

121.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 120 herein as though fully set forth.

122.    Defendants Davin and Michelle are husband and wife.

32

123.    Defendants Davin and Michelle were at all relevant times the Partners, Managers, Governing Persons, and/or owners of Defendants Anne Ryan and Jane Envy.

124.    On or about October 9, 2012, Defendants Davin, Michelle, and Anne Ryan were notified by a customer of Plaintiff's allegations that the Infringing Merchandise sold to such customer through Anne Ryan infringed Plaintiff's copyrights and/or other intellectual property rights.

125.    Upon information and belief, within weeks of being notified and no later than October 31, 2012, Defendants Davin, Michelle, and Anne Ryan began selling and distributing Infringing Merchandise under the name Jane Envy.

126.    Upon information and belief, the Infringing Merchandise sold by Defendants Davin, Michelle, and Anne Ryan under the name Jane Envy was ordered and/or purchased by Anne Ryan.

127.    Upon information and belief, Defendants Davin, Michelle, and Anne Ryan were aware of lawsuits filed by Plaintiff against customers of Anne Ryan in November, 2012 and early January, 2013 alleging copyright and trade dress infringement, among other things.

128.    Defendants Davin and, upon information and belief, Michelle claim to have closed Anne Ryan in or about late January, 2013 and formally opened Jane Envy in or about January or February, 2013.

129.    Jane Envy operates from offices located at the same address as Anne Ryan – 10109 Broadway Street, San Antonio, Texas 78217.

130.    Upon information and belief, Jane Envy assumed or otherwise took over the lease of the property located at 10109 Broadway Street in San Antonio, Texas for Anne Ryan.

33

131.    Upon information and belief, Jane Envy assumed other debts and obligations essential to the operation of Anne Ryan's business.

132.    Upon information and belief, Jane Envy operates using the same furniture, equipment, and other business assets that once belonged to or were used by Anne Ryan.

133.    Upon information and belief, the furniture, equipment, and other business assets of Anne Ryan were transferred to Jane Envy with the fraudulent intent to escape the liabilities of Anne Ryan.

134.    Jane Envy sells products - costume jewelry – that are nearly identical to that sold by Anne Ryan.

135.    Upon information and belief, Jane Envy sells its costume jewelry through only one sales representative, the same sales representative used by Anne Ryan – Defendant Steve O'Brien.

136.    Upon information and belief, Jane Envy operates using the same essential employees and supervisory personnel (Davin, Michelle, and Steve O'Brien) as Anne Ryan.

137.    Jane Envy sells it costume jewelry to many of the same customers as Anne Ryan.

138.    Jane Envy is influenced and governed by Anne Ryan as the alter ego of Anne Ryan.

139.    There is such unity of interest, assets, ownership, and activity that Jane Envy is inseparable from Anne Ryan.

140.    There is such unity and continuation of interest, business operations, assets, ownership, and activity that Jane Envy de facto merged with, or is merely a continuation of, Anne Ryan.

34

141.    Upon information and belief, Anne Ryan is intentionally using Jane Envy as its alter ego and/or its successor entity in a fraudulent attempt to avoid its liabilities and debts, including the liabilities and other relief emanating from this matter.

142.    Upon information and belief, Jane Envy is a mere instrumentality, agent, adjunct, or sham designed to subvert the ends of justice.

143.    Adherence to the corporate fiction of Jane Envy would, under the circumstances, sanction fraud and promote injustice to Plaintiff.

144.    An actual controversy has arisen and now exists between the parties with respect to whether Defendant Jane Envy is Anne Ryan's alter ego and/or a successor entity thereto and whether Jane Envy is therefore liable for Anne Ryan's debts and obligations.

145.    Pursuant to 28 U.S.C. §§ 2201 and 2002, a judicial determination of the respective rights of the parties with respect to the alleged infringement as described herein and whether Defendant Jane Envy is Anne Ryan's alter ego or successor is necessary and appropriate under the circumstances.

146.    Plaintiff seeks a declaration that Defendant Jane Envy is Anne Ryan's alter ego or successor and that Jane Envy is liable for Anne Ryan's debts and obligations, including, but not limited to, the debts and obligations arising from the injunctive relief and all other relief and remedies to be awarded and granted in this matter.

WHEREFORE, Plaintiff demands as follows:

1.    That a temporary restraining order and permanent injunction be issued restraining Defendants, their agents, servants, employees, successors, assigns, and all others in concert or privity with them from infringing Plaintiff's Work and from manufacturing, reproducing,

importing, publishing, displaying, distributing, transmitting, selling, or otherwise placing on the market the Infringing Merchandise and, thus, using Plaintiff's Work without authorization;

2.      That a temporary restraining order and permanent injunction be issued restraining Defendants, their agents, servants, employees, successors, assigns, and all others in concert or privity with them from infringing Plaintiff's Marks, whether in connection with the Infringing Merchandise or otherwise, without authorization;

3.      That a temporary restraining order and permanent injunction be issued restraining Defendants, their agents, servants, employees, successors, assigns, and all others in concert or privity with them from engaging in the unfair competition and deceptive trade practices described above;

4.      That Defendants be required to account to Plaintiff for Defendants' profits and the actual damages suffered by Plaintiff as a result of Defendants' infringement;

5.      That Defendants be ordered to surrender to Plaintiff all property, tangible and intangible including, but not limited to all goods, merchandise and materials which infringe upon Plaintiff's Works, Marks, or Trade Dress, and all tooling, templates, patterns, or other means and media used by Defendants to copy, manufacture, reproduce, publish, display, distribute, transmit, market, promote, license, and sell Defendants' Infringing Merchandise;

6.      That Plaintiff be awarded actual damages and profits or statutory damages against Defendants, in an amount to be determined, subject to Plaintiff's election with respect thereto;

7.      That Defendants be required to pay treble damages for their violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, or such other applicable law.

8.      A declaratory judgment that Defendant Jane Envy is Anne Ryan's alter ego and/or is the successor entity thereto and that Defendant Jane Envy is liable for Anne Ryan's debts and obligations, including, but not limited to, the debts and obligations arising from the injunctive relief and all other relief and remedies awarded and granted in this matter.

9.      That this Court enter a judgment against Jane Envy and in favor of Plaintiff consistent with the terms of the injunctive relief and all other relief and remedies awarded and granted against Defendant Anne Ryan in this matter.

10.     That Defendants be compelled to pay Plaintiff's costs and attorney fees incurred in connection with this action;

11.     That Plaintiff be awarded prejudgment interest pursuant to the Lanham Act, 15 U.S.C. § 1117(b).

12.     Trial by jury of all issues so triable; and

13.     All other and further relief to which Plaintiff may otherwise be entitled.

Respectfully submitted,

ELLIE B. WORD, MSB# 100408
ALEC M. TAYLOR, MSB# 102874

KREBS, FARLEY & PELLETERI, PLLC
One Jackson Place
188 E. Capitol Street, Suite 900
Jackson, Mississippi 39201
601-968-6710 (telephone)
601-968-6708 (facsimile)
eword@kfplaw.com
ataylor@kfplaw.com
*Attorneys for Plaintiff, Ronaldo Designer Jewelry, Inc.*

g:\doc\kac\ronaldo designer jewelry, inc\infringements\anne ryan\pleadings\verified complaint ms.docx

## VERIFICATION

I hereby verify that all of the information contained in the foregoing Complaint is true to the best of my knowledge, information and belief.

Ronnie E. Needham

RONNIE E. NEEDHAM, President of
RONALDO DESIGNER JEWELRY, INC.

COMMONWEALTH OF KENTUCKY    )
                                                           ) ss
COUNTY OF JEFFERSON              )

Subscribed and sworn to before me by RONNIE E. NEEDHAM, President of RONALDO DESIGNER JEWELRY, INC. on July 30, 2014.

**Notary Public, State at Large, KY**
My Commission expires: **My commission expires Aug. 31, 2014**

Tammy Haples
Notary Public

38