IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


RONALDO DESIGNER JEWELRY, INC.                          PLAINTIFF


VS.                          CIVIL ACTION NO: 5:14-cv-68-DCB-MTP


ANNE RYAN, LLC, ROBERT DAVIN SHAW,
MICHELLE E. SHAW, JANEY ENVY, LLC,
ARABELLA IMPORTS, LLC, STEVE O'BRIEN, and
JOHN DOES NUMBERS 1 through 99                          DEFENDANTS

### ORDER DENYING MOTIONS TO DISMISS

This matter comes before the Court on Defendants', Anne Ryan, LLC, Arabella Imports, LLC, and Robert Davin Shaw, Motion to Dismiss for Improper Venue **[docket entry no. 16]**, Defendant's, Michelle E. Shaw, Motion to Dismiss for Lack of Jurisdiction and Improper Venue **[docket entry no. 18]**, Defendant's, Jane Envy, LLC, Motion to Dismiss for Lack of Jurisdiction and Improper Venue **[docket entry no. 20]**, and Defendant's, Steve O'Brien, Motion to Dismiss for Improper Venue **[docket entry no. 21]**. Having reviewed the motions and response, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

I. Factual and Procedural Background

Plaintiff Ronaldo Designer Jewelry, Inc. ("Ronaldo") is a Kentucky corporation which designs, manufactures, and sells jewelry in thirty-five states, including Mississippi. Defendants Anne Ryan,

1

LLC ("Anne Ryan") and Jane Envy, LLC ("Jane Envy") are Texas companies also in the business of selling jewelry. Defendants Robert Davin Shaw ("Davin") and Michelle E. Shaw ("Michelle") are Texas residents with controlling interests in Jane Envy and Anne Ryan. They are also husband and wife. Defendant Arabella Imports, LLC ("Arabella") is a Texas company that imports goods for Anne Ryan. Defendant Steve O'Brien is a Georgia resident who worked in a sales capacity for Anne Ryan. In its verified complaint, Ronaldo brings claims for copyright infringement, trademark infringement, counterfeit trademark infringement pursuant to the Lanham Act, trade dress infringement and unfair competition pursuant to the Lanham Act, unfair competition, vicarious liability, and alter ego/successor liability. Compl. 10, 23, 26, 27, 31, & 32, ECF No. 1.

Ronaldo alleges that the defendants have been copying Ronaldo's designs and producing and marketing lower quality versions of its jewelry as if they were in fact Ronaldo products. Specifically, Ronaldo identifies ten bracelets that it alleges the defendants have unlawfully reproduced.[1] Ronaldo specifically alleges that the defendants marketed and sold their infringing

---

[1] These bracelets are: (1) "The Power of Prayer Bracelet", (2) "The Wide Power of Prayer Bracelet", (3) "Stackable Bracelet", (4) "Pearl of My Heart", (5) "Forever Fellowship Bracelet", (6) "Rediscovered Treasure Bracelet", (7) "Classic Dome", (8) "THE LOVE KNOT", (9) "I LOVE YOU BRACELET", and (10) "THREE TIMES LOVE". Compl. 10-22.

merchandise to several Mississippi companies who then sold them to Mississippi residents. Ronaldo also alleges that the defendants sold products to one Louisiana merchant who then sold the products at the Canton Flea Market in Canton, Mississippi. Resp. 15-16, ECF No. 26.

All of the defendants have moved to dismiss this action for improper venue. Mot. Dismiss, ECF No. 16 (Anne Ryan, Arabella, and Davin); Mot. Dismiss, ECF No. 18 (Michelle), Mot. Dismiss, ECF No. 20 (Jane Envy); Mot. Dismiss, ECF No. 21 (O'Brien). Two of the defendants, Michelle and Jane Envy, have also moved to dismiss for lack of jurisdiction. Mot. Dismiss, ECF No. 18 (Michelle); Mot. Dismiss, ECF No. 20 (Jane Envy). Ronaldo opposes these motions, arguing that jurisdiction and venue are proper as to all defendants.

## II. Analysis

### A. Personal Jurisdiction

Michelle and Jane Envy have challenged this Court's jurisdiction over them under Federal Rule of Civil Procedure 12(b)(2), in addition to their venue challenges under Rule 12(b)(3).[2] The Court will examine the jurisdictional questions first and analyze all of the venue motions together.

When a defendant challenges personal jurisdiction, the burden

---

[2] All references in this opinion are to the Federal Rules of Civil Procedure unless otherwise noted.

shifts to the plaintiff to prove that jurisdiction exists. Luv N'
care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006).
But the plaintiff need only make a prima facie showing. Id. The
Court must conduct a two-pronged analysis to determine whether
personal jurisdiction exists.[3] First, the Court looks to
Mississippi's long-arm statute. Stripling v. Jordan Prod. Co., LLC,
234 F.3d 863, 869 (5th Cir. 2000). Second, the Court determines
whether the exercise of jurisdiction comports with due process
under the Constitution. Id. The second prong is broken down into a
three-step analysis: "(1) whether the defendant . . . purposefully
directed its activities toward the forum state or purposefully
availed itself of the privileges of conducting activities there;
(2) whether the plaintiff's cause of action arises out of results
from the defendant's forum-related contacts; and (3) whether the
exercise of personal jurisdiction is fair and reasonable."[4] Nuovo
Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 378 (5th Cir. 2002)
(citing Burger King Corp. V. Rudzewicz, 471 U.S. 462, 474 (1985)).

---

[3] Even though the Court exercises original jurisdiction over
the federal claims in this case, "[t]he forum state may create,
and this court would be bound to apply, additional jurisdictional
restrictions by statute. . . ." Luv N' care, 438 F.3d at 469
(citing Adams v. Unione Mediterranea Di Sicurta, 220 F.3d 659,
667 (5th Cir. 2000)). And Mississippi's long-arm statute is not
co-extensive with due process. Tichenor v. Roman Catholic Church
of Archdiocese of New Orleans, 32 F.3d 953, 958 (5th Cir. 1994).

[4] This inquiry is for specific personal jurisdiction.
Ronaldo does not allege that any of the defendants are open to
general personal jurisdiction in this case. See Resp. 15, ECF No.
29 ("In this case, specific jurisdiction is at issue.").

1. Mississippi Long-Arm Statute

Mississippi's long-arm statute provides that the courts shall have jurisdiction over a nonresident who: (1) "make[s] a contract with a resident of this state to be performed in whole or in part by any party in this state," (2) "commit[s] a tort in whole or in part in this state against a resident or nonresident", or (3) "do[es] any business or perform[s] any character of work or service in this state." Miss. Code Ann. § 13-3-57 (1991). Michelle argues that "[t]here is no allegation that [she], directly, contracted within the state of Mississippi, nor is there any allegation that she individually did business. The allegations sound in tort and do not suggest that she individually committed a tort . . ., but rather other corporate entities did." Mem. Supp. 3, ECF No. 19. Jane Envy argues that the "operative question" in its case is whether the "doing business" prong of the long-arm statute has been satisfied. Mem. Supp. 3, ECF No. 23. Ronaldo argues instead that Michelle's and Jane Envy's "actions qualify under all three" prongs.[5] Resp. 16 n.55, ECF No. 29; Resp. 15 n.53, ECF No. 27.

---

[5] Ronaldo alleges that

First, [Michelle] conspired and contracted with [Ben Gilbert, Inc. ("BGI"), a non-party Mississippi corporation,] to copy, produce, and sell infringing copies of [Ronaldo's] works. The performance, [Michelle's] obligation to supply and ship the infringing copies to Mississippi and BGI's obligation to make payment from Mississippi, was, at least partially, to be made in Mississippi. Second, [Michelle] committed a tort, at least partially, in Mississippi by conspiring with a

Central to Ronaldo's argument is piercing the corporate veil of Anne Ryan and Jane Envy. Ronaldo argues that Jane Envy is a mere continuation of Anne Ryan and that Michelle can be charged for the actions of both entities. Resp. 11, ECF No. 11 ("Jane Envy is the successor and alter ego to Anne Ryan, and Michelle was actively involved in this fraudulent scheme to avoid Anne Ryan's creditors.")

"While the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation, courts have recognized an exception to this rule when the corporation is the alter ego of the individual." Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985). "[T]he alter ego test for . . . personal jurisdiction[] is less stringent than that for liability." Id., at 1198 n.12. The existence of either a "shell corporation or fraud is sufficient by itself to justify jurisdiction." Id. Since recognizing the alter ego doctrine, the Fifth Circuit has articulated a "laundry list" of factors for a

_____

Mississippi resident to copy, produce, and sell infringing copies of [Ronaldo's] works, and by selling such infringing copies to residents of Mississippi . . . . Third, [Michelle] did business in Mississippi by contracting with a Mississippi resident to copy, produce, and sell the infringing copies, and by selling the infringing copies to residents of Mississippi.

Resp. 16 n.55, ECF No. 29. The only difference between the arguments concerning Michelle and Jane Envy is that Ronaldo adds the allegation that Jane Envy "contracted with Judson & Co. to supply the infringing goods to it." Resp. 15 n.53, ECF No. 27. Otherwise, the arguments are substantially similar.

6

court to consider:

> (1) the parent and the subsidiary have common stock
> ownership;
> (2) the parent and the subsidiary have common directors
> or officers;
> (3) the parent and the subsidiary have common business
> departments;
> (4) the parent and the subsidiary file consolidated
> financial statements and tax returns;
> (5) the parent finances the subsidiary;
> (6) the parent caused the incorporation of the
> subsidiary;
> (7) the subsidiary operates with grossly inadequate
> capital;
> (8) the parent pays the salaries and other expenses of
> the subsidiary;
> (9) the subsidiary receives no business except that given
> to it by the parent;
> (10) the parent uses the subsidiary's property as its
> own;
> (11) the daily operations of the two corporations are not
> kept separate; and
> (12) the subsidiary does not observe the basic corporate
> formalities, such as keeping separate books and records
> and holding shareholder and board meetings.

U.S. v. Jon-T Chems., Inc., 768 F.2d 686, 691-92 (5th Cir. 1985).

While these factors were "designed for reviewing a parent-

subsidiary relationship, they can be modified to determine whether

a corporation is the alter ego of an individual."[6] Mylonakis v. M/T

---

[6] In Century Hotels, a case concerning disputed property in
a bankruptcy, the district court "gleaned the important factors
from the Jon-T list" to be considered when they are applied to an
individual. Century Hotels v. U.S., 952 F.2d 107, 110 (5th Cir.
1992). The modified factors are:

> (1) Whether [the individual] expended personal funds for
> the property;
> (2) Whether [the individual] enjoyed the benefit of the
> disputed property;
> (3) Whether a close family relationship existed between
> [the individual] and the titleholder of the disputed

GEORGIOS M., 909 F. Supp. 2d 691, 715 (S.D. Tex. 2012) (citing Century Hotels v. U.S., 952 F.2d 107, 110 & n.5 (5th Cir. 1992)). These factors, however, are not static when applied to an individual, and different courts have reformulated them.[7] See e.g.,

---

property;
(4) Whether [the individual] exercised dominion and control over the disputed property;
(5) Whether the record titleholder of the disputed property, [the company], interfered with [the individual's] use of the property;
(6) [The individual's] ownership of [the company];
(7) Whether [the company] observed corporate formalities;
(8) Whether [the company] maintains bank accounts, books and records;
(9) Whether [the company] and [the individual] commingled funds;
(10) [The company's] capitalization;
(11) Whether [the individual] transferred assets, property, or funds to [the company] or vice versa;
(12) Whether [the company] was organized by [the individual];
(13) Whether [the company] had a distinct business with its own employees;
(14) Whether [the company[ transacts [the individual's] business; and
(15) Whether [the company] pays [the individual's] personal obligations.

Id., at 110 n.5.

[7] For example, another iteration of the factors applied to an individual lists:

(1) whether the [individual] completely control[led] the corporate defendants; (2) the level of financial integration between the [individual] and the corporate defendants; (3) whether the corporate defendants operate with grossly inadequate capital; (4) whether the [individual] use[s] the corporate defendants' property as [his] own personal property; (5) whether the [individual] use[s] the corporate defendants to pay personal obligations; and (6) whether the [individual] act[s] as if the corporate defendants are extensions of their own

id. Further, although Anne Ryan and Jane Envy are not parent-subsidiary but rather two unaffiliated corporate entities, the Court finds that the same factors can be modified to analyze the alter ego doctrine in the context of a successor entity, as well.

Turning first to the relationship between Anne Ryan and Jane Envy, Ronaldo alleges that Michelle incorporated Jane Envy merely to avoid Anne Ryan's creditors.

> Conveniently, following this rash of creditors chasing it and its customers, Anne Ryan closed down in January 2013. No so coincidently, in February 2013 almost immediately after Anne Ryan's shutdown, Jane Envy pops up as a new entity owned by the same owners (or, at least the spouse of the prior owner) that sells the same type of merchandise (costume jewelry, often with a cross theme) through the same sales representative (Steve O'Brien) out of the same physical space (even assuming Anne Ryan's lease) to many of the same customers. Further demonstrating the clear continuation of business and fraudulent scheme to avoid creditors such as [Ronaldo], starting in October 2012 in conjunction with Anne Ryan's first notice of [Ronaldo] asserting infringement against one of it customers, sales of the infringing goods also started to be made under the name of Jane Envy – even though Jane Envy was not formally organized until February 2013. [Ronaldo] submits that the goods sold by Jane Envy were actually purchased by and belonged to Anne Ryan.

Resp. 12, ECF No. 27 (footnotes omitted). Based on these facts, the Court finds that Ronaldo has made out a prima facie case that Jane Envy was a mere continuation or alter ego of Anne Ryan, and the actions of Anne Ryan can be attributed to Jane Envy. A prima facie

---

personal interests.

Mylonakis, 909 F. Supp. 2d at 715.

case is all that need be made at this stage. See Luv N' care, 438 F.3d at 469. The Court "must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." Id. (citing Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982)). Therefore, the Court finds that Jane Envy's actions satisfy Mississippi's long-arm statute.

Turning next to Michelle as the alter ego of Jane Envy, Ronaldo alleges that her "role in this fraudulent scheme renders the actions of Anne Ryan and Jane Envy attributable to her. . . ." Resp. 12, ECF No. 29. Michelle is the sole shareholder of Jane Envy. Resp. 10, ECF No. 29. Further, sales appear to have been made in the name of Jane Envy before its date of incorporation which would make such sales attributable to Michelle as a sole proprietorship. Resp. 10-11, ECF No. 29. The Court finds that the alleged actions of Michelle individually satisfy the "doing business" prong of Mississippi's long-arm statute. Finding that the long-arm statute is satisfied as to both defendants, the Court next analyzes whether personal jurisdiction is proper under the Fourteenth Amendment.

### 2. Purposeful Availment

"A defendant establishes minimum contacts with a state if the defendant's conduct and connection with the forum state are such that they should reasonably anticipate being haled into court there." Nuovo Pignone, 310 F. 3d at 379. By some act, a defendant

must purposely avail itself of the benefits and protections of the laws of the forum state by conducting activities in the forum state. Id. Although a defendant may lawfully arrange his "conduct to avoid being haled into court in a particular state," id. (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)), "a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact," id. (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222 (1957)).

Ronaldo has put forth evidence that Jane Envy and Michelle placed products, the infringing jewelry, into the stream of commerce with knowledge that the products would ultimately reach Mississippi. This rises to the level of purposeful availment. See Luv N' care, 438 F.3d at 470. The Court next considers whether these minimum contacts are sufficiently related to the cause of action.

3. Relationship between Contacts and Cause of Action

The Fifth Circuit has previously found a sufficient connection to confer personal jurisdiction when the allegedly infringing product "traveled through the stream of commerce" to the forum state. See id., at 473. The facts of this case are analogous, so that the Court finds a sufficient connection to justify jurisdiction. The Court finally analyzes whether the exercise of jurisdiction over these defendants would offend traditional notions

of fair play and substantial justice.

4. Traditional Notions of Fair Play and Substantial Justice

"When a plaintiff makes a prima facie case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." Id. Jurisdiction is unreasonable if it would "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945). "It is rare" for a court to find that jurisdiction is unreasonable "after minimum contacts have been shown." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (1999). Courts consider: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in securing convenient and effective relief; (4) the interstate judicial system's interest in the efficient administration of justice and resolution of controversies' and (5) the shared interest of the several states in furthering fundamental social policies. Luv N' care, 438 F.3d at 473; Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC, 255 F. App'x 775, 793 (5th Cir. 2007).

Ronaldo argues that the defendants have "done nothing to show that the exercise of jurisdiction by this Court would be unreasonable." Resp. 21, ECF No. 29; see also Resp. 19, ECF No. 27. Finding that neither Michelle nor Jane Envy made any arguments to

12

meet their shifted burden of proof, the Court finds that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Therefore, the Court will deny the motions to dismiss for personal jurisdiction.

## B. Venue

All defendants in this case have moved to dismiss for improper venue, or alternatively, to transfer to an appropriate venue. The defendants only challenge venue under 28 U.S.C. Section 1400(a) in their motions, and they have likely waived any challenge to venue under 28 U.S.C. Section 1391. Ronaldo addresses Section 1391 in its responses, and in their replies, the defendants argue that their motions "do[] address the language of this statute by requesting dismissal on the grounds of the Defendant[s'] residency in Texas [and Georgia] and requesting dismissal due to the lack of events or omissions giving rise to the claim in Mississippi. . . ." Reply 3, ECF No. 30. The Court will, in an abundance of caution, analyze venue under both statutes.

## 1. General Venue Statute

Section 1391 provides that a civil action may be brought in a judicial district where (1) any defendant resides if all are residents of the forum state, (2) where a substantial part of the events, omissions, or property giving rise to the claim are located, or (3) if no other district is appropriate, any district where any defendant is subject to personal jurisdiction. 28 U.S.C.

13

§ 1391(b) (2011). Ronaldo argues that venue is appropriate in the Southern District of Mississippi under subsection two because the conspiracy with BGI originated in this district and the infringing works were sold in this district. Resp. 9-10, ECF No. 26. The Court finds that these allegations are sufficient and venue is appropriate under this statute.

### 2. Copyright Venue Statute

Section 1400 provides that civil actions related to copyrights "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a) (1999). "It is well established that an individual defendant 'resides' for venue purposes in the district of his residence or legal domicile." Burkitt v. Flawless Records, Inc., No. 032483, 2005 WL 6225822, at *5 (E.D. La. June 13, 2005) (citing 17 MOORE'S FEDERAL PRACTICE 3d 110.03 (2002)). And for corporate defendants, analogous principles apply. Ronaldo does not argue that any of the defendants reside in this district, but rather that they "may be found" here.

"It is well established that, for purposes of Section 1400(a), a defendant 'may be found' in any district in which it is subject to personal jurisdiction." Gen. Design Sign Co., Inc. v. Am. Gen. Design, Inc., No. 3:02cv2298H, 2003 WL 251931, at *2 (N.D. Tex. Jan. 31, 2003). Having previously found that Jane Envy and Michelle are subject to personal jurisdiction, the Court finds that venue is appropriate as to these defendants. Ronaldo further argues that

14

because the remaining defendants did not object to personal jurisdiction, they have waived such objection, and, ergo, venue is appropriate. Resp. 11-12, ECF No. 26. It is true that defendants Anne Ryan, Davin, Arabella, and O'Brien did not challenge personal jurisdiction in their motions.[8] Though the Court did not find a decision from this jurisdiction, other courts in the Fifth Circuit have held that where a defendant objects to venue under Section 1400(a) but does not also object to personal jurisdiction, both personal jurisdiction and venue are proper. See e.g., Gen. Design Sign, 2003 WL 251931, at *1-2; GreenTech Auto., Inc. v. Franklin Cntr. For Gov't & Public Integrity, No. 3:13cv94, 2014 WL 3699866, at *2 (N.D. Miss. July 24, 2014) (citing to General Design Sign but holding that defendant did object to personal jurisdiction); Stuart v. Fire-Dex, LLC, No. H13675, 2013 WL 5852234, at *3-4 (S.D. Tex. Oct. 30, 2013); El Paso Healthcare Sys., Ltd. v. Molina Healthcare of N.M., Inc., No. 3:09cv54, 2009 WL 1743221, at *4 (W.D. Tex. May 1, 2009) (holding same as GreenTech); Burkitt, 2005 WL 6225822, at *5. Based on these decisions, the Court finds that because the remaining defendants did not object to personal jurisdiction, venue is appropriate as to them. Therefore, the Court will deny the motion to dismiss based on improper venue. Further, because the

---

[8] Although the above defendants attempt to include a challenge under Rule 12(b)(2) in their reply briefs, their memoranda of support specifically state that the motions are brought pursuant to Rule 12(b)(3) and make no mention of Rule 12(b)(2).

Court finds venue is appropriate, the Court will decline to transfer under 28 U.S.C. Section 1406(a).

### C. Forum Non Conveniens

Lastly, the defendants argue in their reply briefs that the Court should decline to hear this case because a Texas court would be a more appropriate and more convenient tribunal. To obtain dismissal under the doctrine of forum non conveniens, a party must show "(1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal." <u>Vasquez v. Bridgestone/Firestone, Inc.</u>, 325 F.3d 665, 671 (5th Cir. 2003). "Convenience for the litigants and the public at large 'is the cornerstone' of the forum non conveniens inquiry." <u>Royal Ten Cate USA, Inc. v. TT Investors, Ltd.</u>, 562 F. App'x 187, 189 (5th Cir. 2014) (per curiam) (quoting <u>Great Prize, S.A. v. Mariner Shipping Party, Ltd.</u>, 967 F.2d 157, 160 (5th Cir. 1992)). The Supreme Court indicated that when weighing the private interest factors,

> [i]mportant considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

<u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947). And when weighing the public interest factors, a court should consider the

> [a]dministrative difficulties [that] follow for courts
> when litigation is piled up in congested centers instead
> of being handled at its origin. Jury duty is a burden
> that ought not to be imposed upon the people of a
> community which has no relation to the litigation. In
> cases which touch the affairs of many persons, there is
> reason for holding the trial in their view and reach
> rather than in remote parts of the country where they can
> learn of it by report only. There is a local interest in
> having localized controversies decided at home. There is
> an appropriateness, too, in having the trial of a
> diversity case in a forum that is at home with the . . .
> law that must govern the case, rather than having a court
> in some other forum untangle problems in conflict of
> laws, and in law foreign to itself.

Id., at 508-09. "No particular element of the test is 'of dispositive weight' when performing a forum non conveniens analysis." Royal Ten Cate USA, 562 F. App'x at 190 (quoting Syndicate 420 at Lloyd's London v. Early Am. Ins. Co., 796 F.2d 821, 827 (5th Cir. 1986)).

In support of their argument, defendants urge that all relevant evidence and witnesses with knowledge of the nature of the entities and their internal operations are in Texas, "and the Defendants would suffer substantial lost time and expense in travel to Mississippi," in addition to their argument that this Court would have to apply the law of another state. Reply 2-3, ECF No. 30. Ronaldo counters that witnesses relevant to the actual manufacture and sale of the allegedly infringing goods are located in Mississippi, and, further, that "[t]he burden on Defendants to travel to Mississippi will be nominal since the corporate Defendants already send a sales representative" to Mississippi.

17

Surreply 3, ECF No. 41. Having weighed the factors, the Court finds that the Southern District of Mississippi is not inconvenient to the defendants warranting dismissal; therefore, the motion to dismiss will be denied.

### III. Conclusion

The Court denies all of the motions to dismiss. Having found that a prima facie case that Jane Envy is the alter ego of Anne Ryan has been made, the Court finds that personal jurisdiction is appropriate as to it. The Court further finds that Ronaldo has sufficiently alleged Michelle's individual actions to justify personal jurisdiction. Next, the Court finds that venue is appropriate as to all defendants either because the defendant did not object to personal jurisdiction or because the Court had previously found personal jurisdiction. Lastly, the Court finds that this district is not an inconvenient forum warranting dismissal under the doctrine of forum non conveniens.

### IV. Order

IT IS HEREBY ORDERED that defendants', Anne Ryan, LLC, Arabella Imports, LLC, and Robert Davin Shaw, Motion to Dismiss for Improper Venue is DENIED.

FURTHER ORDERED that defendant's, Michelle E. Shaw, Motion to Dismiss for Lack of Jurisdiction and Improper Venue is DENIED.

FURTHER ORDERED that defendant's, Jane Envy, LLC, Motion to Dismiss for Lack of Jurisdiction and Improper Venue is DENIED.

18

FURTHER ORDERED that defendant's, Steve O'Brien, Motion to Dismiss for Improper Venue is DENIED.


SO ORDERED this the 10th day of February 2015.

                              /s/ David Bramlette
                              UNITED STATES DISTRICT JUDGE